No. 3035.

E. Y. THOMPSON *v.* THE STATE.

1. THEFT — EVIDENCE — CERTIFICATE OF REGISTRATION OF BRAND.— The certificate of the county clerk to a copy of the record of the brand of W. P. Coats, reads as follows: "The State of Texas, County of Taylor: I, David J. Red, clerk of the county court of said county, do hereby certify that the foregoing is a true copy of the record of the mark and brand of W. P. Coats (horse brand.)" Signed, with seal, etc., *Held*, sufficient to show that the said brand was recorded in Taylor county.

2. SAME —The proof shows that Coats lived in Taylor county when his brand was recorded in that county, and that, at the time of the alleged theft of the horse, he lived in Callahan county, at which said time his horse stock ran in the counties of Taylor, Callahan and Coleman. *Held*, that the record of the brand in Taylor county was sufficient, and complied with the provisions of the statute (Rev. Stats., art. 4556), which require that marks and brands shall be recorded in the county court of the county in which the stock may be.

3. SAME.—By express provision of the statute (Rev. Stats., art. 4561), marks and brands, which would otherwise be intrinsically evidence of ownership, are admissible in the courts of this State, to prove ownership, only when they have been duly recorded. This rule applies to equine as well as to other stock named in the statute.

4. SAME—FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for horse theft.

APPEAL from the District Court of Coleman. Tried below before the Hon. J. C. Randolph.

The conviction in this case was for the theft of a horse alleged to be the property of Pink Coats, in Coleman county, Texas, on the tenth day of September, 1887. The penalty assessed by the verdict was a term of five years in the penitentiary.

W. P. Coats was the first witness for the State. He testified that his name was W. P. Coats, but he was generally called and commonly known as "Pink" Coats. For the three or four years next preceding this trial he had lived in Callahan county, but in February, 1879, when his horse brand was recorded in Taylor county, he resided in the said Taylor county. He owned thirty or forty head of horses whose range was in Callahan and

Taylor counties.   Some of the said horses ranged at times in the northwest corner of Coleman county.   In December, 1886, or in January, 1887, the witness missed from her accustomed range a certain dark bay filly which he owned, and which, at the time of her disappearance, was about twenty months old. The witness last saw that animal in his lot in Callahan county in the fall of 1886.   The said animal was branded PC on the left shoulder.   Its mother sometimes ran on Jim Ned and Honey creeks, in Coleman county.   Witness's brand was recorded in Taylor county, as shown by the certified copy now tendered in evidence (and set out in the opinion), but had never been recorded in either Callahan or Coleman county.   The witness had never seen his bay filly since the fall of 1886.   He never gave his consent to any person to take that animal.   He never saw the defendant to know him until the previous term of this court, when the defendant told him that if he proved on the trial that the said animal belonged to him, witness, he, defendant, would pay witness for it, but otherwise he would not.

Bill Hughes was the next witness for the State.   He testified that, for the past ten years, he had known the defendant, who lived on Hord's creek, in Coleman county.   He also knew Coats and some of Coats's horse stock.   He had seen Coats managing and controlling horses in the PC brand that ranged in Taylor, Callahan and Coleman counties.   In September, 1887, the witness saw a bay mare branded PC in Jackson's pasture, in Coleman county.   That animal, which was then between two and three years old, was in a bunch of twenty or thirty horses which was in the possession of the defendant, who had a man and two boys with him.   Townsend, Straley and some other parties were with the witness when he saw the said animal in the possession of the defendant.   They were in a hack riding along the public road which paralleled the pasture fence, and the defendant had the drove of horses just inside of the pasture and near the said road.   The hack stopped, and the witness and his party had a short conversation with the defendant, who told him that he was going to ship those horses that night from Coleman City.   The witness next saw the defendant on the same evening in Coleman City.   The animal described by the witness appeared to him to be about two years old.   He did not observe it nor its brand until the hack started from the place where it had stopped for the parties to talk to the defendant, and the witness saw the animal and its brand only from the road as they

were riding along. He had never seen it before, so far as he knew. The PC brand on the animal was plain and distinct. Witness said nothing to the defendant at that time about the animal or the brand.

William Townsend testified, for the State, that he was one of the parties in the hack at the time referred to by Hughes. The hack stopped at a certain point on the road bounded by the fence of the Jackson pasture, and a short conversation then ensued between the defendant and the several parties in the hack. The defendant at that time had possession of a drove of twenty-five or thirty head of horses, which he said he was going to ship on that night. John Mann and two boys, one of whom the witness thought was defendant's son, were with the defendant. The drove of horses was just inside of the pasture, and was being driven up the pasture and along the fence, which paralleled the road. After the hack left the place of the conversation and had traveled three or four hundred yards up the road, in the direction that the horses were going, the witness observed in the bunch a light brown or bay mare, branded PC on the left shoulder. The witness did not know the age of that animal, but took it to be two or three years old. Some of the horses in the bunch were branded 2D. The brand on the animal was plain, and was taken by the witness to be PC. Some men might have taken that brand for PG. The witness told Charles Thompson that the brand on the said animal was PC. He denied that he ever told the said Charles Thompson that he could not say the said brand was PC. One of the parties in the hack, referring to the animal, said: "There is a PC." Looking at that animal, the witness took the brand to be PC.

Mr. Straley and A. Townsend, the two other parties who were in the hack, testified, for the State, substantially as did the witness William Townsend, except that A. Townsend could not remember whether the animal was a horse or a mare, and Straley, without any qualification whatever, stated that the brand on the said animal was a plain PC.

Jacob Rathman testified, for the State, that he saw the defendant in Coleman City one evening in September, 1887, and on the same evening saw a drove of twenty-five or thirty head of horses in the stock pens of the Gulf, Colorado & Santa Fe railway. Among the said horses was a dark brown or very near black mare, two or three years old, branded PC on the left shoulder. The said brand was a perfectly plain and distinct

one. Witness did not think that animal could have been above three years old, although she may have reached the age of four years.

J. M. Barnet testified, for the State, that he was with Rathman, and saw the animal referred to by him. It was among a number of horses which the defendant had in the railroad stock pens; was bay or light brown in color, two or three years old, and distinctly branded PC on the left shoulder.

L. B. Rogers, hide and animal inspector of Coleman county, testified, for the State, that, in September, 1887, the defendant got the witness to go to the railway stock pens in Coleman City to inspect a drove of horses for him. When he first requested witness to go to the pens to inspect the animals, he said that, as they were all in his straight brand, it would not take long to inspect them. He then left witness for the purpose, as he said, of getting another horse. Witness went to the pens and found all the horses to be in the defendant's brand except a dark bay or brown mare, two or three years old, which was distinctly branded PC. There was another animal in the bunch which had the defendant's brand and also another brand. "When the defendant came back he said: 'I told you they were all in my brand, but there are two in the PG brand.' and he pointed out the animal branded PC, and said, 'that is the PG, and that, and has not my brand on it.' I said: 'All right; I have got it.' The animal was about six feet from me and I, thinking he had miscalled the brand, said 'all right.' It was a plain PC and so I reported it to the county clerk. The brand was so plain a PC I did not correct him, thinking he had just miscalled the brand."

Continuing, the witness testified that he helped the defendant load those horses on the cars. John and Tip Mann, two witnesses now under the rule, went off with the defendant and the horses. It was three or four hours before sun down when the defendant called upon witness to inspect the said animals. Five or six people, standing about the pen, or sitting on the fence, were present at the inspection, and when the defendant said that two of the horses in the bunch were in the PG brand. Neither the witness nor any of the parties at the pen said anything about the brown mare being a PC and not a PG animal. The witness could not swear that the said animal was not five years old. She was about the same size as the other animals in the bunch.

Mr. Buchanan testified, for the State, that he met the de-

.fendant in Fort Worth, Texas, in September, 1887. Defendant then had in charge a car load of horses. Among those animals the witness observed a dark bay mare, smaller than the majority of the other animals, two or three years old, and branded PC on the left shoulder. The witness said nothing to the defendant about that animal.

The State closed.

Milt Graham was the first witness for the defense. He testified that, in the fall of 1882, he sold the defendant, on range delivery, his entire stock of horses in the PG brand. The stock of horses in that brand ranged in the northwest part of Coleman county. The stock delivered consisted of eleven or twelve head, and two or three mares still on the range—witness could not accurately say how many. The mares that were out at the time of the delivery were branded PG. Witness had frequently had people mistake the G on some of his horse stock for C. Many of the G's were so indistinct that they could easily be taken for C. Defendant himself did not, and could not, know how many PG mares he had, for witness did not know how many, besides the eleven or twelve pointed out, were on the range—and he sold the defendant the entire brand. The prevailing colors of the PG stock of horses were bay and brown. Under the custom of the horse range, whenever a stock man, in branding his colts, should find an unbranded colt following a branded mare, he would place the colt in the same brand that was on the mare, whether he knew or did not know who owned the brand. Mr. Hudson once found one of witness's PG mares running on the range with a colt, and he accordingly put the colt in the brand of its mother. At the time of the sale to defendant, witness told him that a man had put the PG brand on a colt that he, witness, had never seen. Defendant's ·brand was NED. The PG brand was rather a small one.

Mr. Moore testified, for the State, that some time in the summer of 1887 he saw a certain brown mare, branded PG on the left shoulder, running on the range in Coleman county, the range being west of Hord's creek and near the pasture of C. C. Hudson, which said pasture was about six miles distant from the residence of the defendant. Mr. Coan, who was in attendance upon this court, was with the witness at that time When the witness and Coan returned to defendant's place on that day, Coan asked defendant who gave the PG brand. Defendant re-

plied that he owned the said brand. Coan then told defendant about him and witness seeing the PG mare on the range near Hudson's pasture. A few days thereafter the witness, who was a tenant on defendant's place, saw defendant and Coan driving that same mare into defendant's pen. Afterwards, and just before defendant shipped his horses, the witness saw that same mare in Jackson's pasture.

Mr. Coan testified, for the defense, that he knew the animal for the theft of which defendant was on trial. He first saw her in the summer of 1887, on the range near Hudson's pasture in Coleman county. The witness and Moore were together on that occasion, the witness looking for defendant's stock. The said animal was a brown mare between four and five years old, branded PG on the left shoulder. When witness and Moore got back to defendant's house on that day, the witness asked the defendant who gave the PG brand. He replied that he owned that brand, having bought it from Milt Graham. Witness then told him that he and Moore had seen a brown mare in that brand on the range near Hudson's pasture, and that she was in fine condition for shipment. Some days thereafter the witness and defendant hunted for, found and drove up the said mare, and afterwards put her in Jackson's pasture with other horses, and after that the defendant drove her to Coleman City, and with other horses shipped her to market. The witness helped the defendant drive the bunch the first three or four miles towards Coleman City, where it was shipped, and he knew as a fact that the said mare was the only animal in the bunch that was not in the defendant's brand. Witness knew that the said animal was the animal for the theft of which the defendant was now on trial, because he personally knew that she was the only PG or PC animal in the bunch, either in Jackson's pasture or in Coleman City, when shipped. The brand on that animal was PG, the letters being rather small and the G somewhat indistinct, and in such condition that it could readily be taken for PC at a distance of ten or fifteen steps.

Coon Anderson testified, for the defense, that in August, 1887, he found a brown mare branded PG on the left shoulder, running in his pasture, and at once turned her out of the pasture on the range. It was the only animal in the PG or PC brand that witness ever saw on that range. Witness knew the PG to be the brand that Milt Graham once owned. The said mare looked like the Graham stock of horses

Mr. Merrimam testified, for the defense, that in the summer of 1887 he saw a certain brown mare, two or three years old, branded PG on the left shoulder, in Hudson's pasture, in Coleman county, and afterwards saw the same animal on the range near the said pasture.

J. A. Couch testified, for the defense, that he lived in Coleman county, Texas. Early in 1887 the witness took a drove of horses to the Memphis, Tennessee, market. While he was in Memphis, the defendant arrived in that city from Coleman, Texas, with a car load of horses. The witness and the defendant shipped their horses together from Memphis to Huntsville, Alabama, and afterwards kept their stock together. While in Alabama, the defendant received a letter from his brother in Coleman county, Texas, in which the defendant was informed that some person in Coleman county claimed that he, defendant, had an animal in his bunch branded PC on the left shoulder, belonging to him. Defendant referred the letter to the witness with the remark: "Couch, don't this beat hell? I want you to go back with me to where the mare is and examine it closely, and see if it is a PC mare." The witness told the defendant in reply that there was no necessity of going back to where the mare had been left—five miles distant—to examine her, as he had been with her on the drive, and absolutely knew that the brand was PG. Defendant said again that he wanted the witness to be positive and sure about it, and witness told him that he knew the brand to be PG and not PC. The witness took the said animal to be three or. four years old. Witness was once indicted and tried for perjury, but was acquitted.

C. W. Thompson, the brother of the defendant, testified in his behalf, that, while the defendant was in Tennessee, with his horses, in 1887, he, witness, wrote to him, telling him that a party in Coleman county was claiming that defendant had one of his mares—an animal branded PC—in his bunch. To that letter, the witness received the following answer, which was read in evidence:

"Scottsborough, October 17, 1887.

"*Dear Charley:*

I was glad to get your letter this morning, at which time I received four letters from the family at home. I was sorry indeed to hear of the talk that there was about the PG mare—not

that I am uneasy in the least about her, for there can be no danger nor mistake. As soon as I heard of it I called Mr. Couch's attention to her, and told him that I wanted him to go and take her brand down, and examine it close. He told me that he was positive that it was PG and not PC. I had two of them, and they were the remnant of the Milt Graham stock that I sold Mr. Sutherland. I know that you can recollect the stock. I can get a certificate from the man I traded her to, and as many more certificates as I want. If the grand jury has not adjourned please go before them with this letter, and tell them to hold up until I get a chance, and I will satisfy all parties that there is no dirt about that mare. If it (the grand jury) has adjourned, please see and send this letter to Mr. Coats, and tell him that I will satisfy him about her when I return; that I have not a doubt about her being my mare, and that I can convince him of the fact; and that if I can't satisfy him that she is my mare, and he can satisfy me that she is his mare, there is no man more willing to right it than I am, for I don't want, and won't have her if she is not my own mare.

"I have swapped out for mules—good ones—and I think I will sell out at fair prices soon, and be at home. I may have to take them to Georgia first, and if so, please see Jim Coleman, Baird and Roscoe and tell them to rest easy; that I will be back and pay them principal and interest." * * * The balance of the letter has no reference to any matter involved in this trial.

Continuing, the witness C. W. Thompson said that, on one occasion, on the road between Coleman and witness's house, the State's witness William Townsend told the witness that he could not swear that the brand on the mare he saw in Jackson's pasture was PC.

Of the witnesses who testified, the following, while on the stand, reproduced on paper the brand on the said animal, as they deciphered it:

William Hughes, PC.
Jacob Rathman, PC.
L. B. Rogers, PC.
John Straley, PC.
W. P. Coats, PC.
Alex Townsend, PC.
William Townsend, PC.
Milt Graham, PG.
Mr. Mann, PG.

The C as made by William Townsend had a small down stroke at the lower end, but not large enough to make the letter a G.

In support of his motion for new trial, the defendant set out he would prove the brand on the animal to have been PG and not PC, by the absent witnesses G. B. Mann, J. J. Jackson and Mort Reagan, the affidavit of each of whom was filed, to the effect that they took the brand on the animal to be PG.

*Scott & Jenkins* and *W. L. Vining,* for the appellant: We submit that the law with reference to recording brands does not apply to horses. (Rev. Stats., arts. 4556–4558; Penal Code, arts. 773, 781.)

Before the certificate of any brand is admissible in evidence it must appear from such certificate, first, in what county the same is recorded; second, that it was recorded by the clerk of such county in a record kept for that purpose.

1. It does not appear from the certificate of the clerk that the said brand was recorded in Taylor county.

2. It does not appear from said certificate in what county the brand is recorded. The certificate, which is attached to a purported copy from a record of marks and brands, reads as follows: "State of Texas, County of Taylor: I, David J. Red, clerk of the county court in and for said county, do hereby certify that that the foregoing is a true copy of the record of the mark and brand of W. P. Coats (horse brand.)" (Rev. Stats., arts. 4556, 4560, 4561.)

A fraudulent intent is the gist of the offense. The appellant owned the PG brand. · The witnesses for the State testified that the animal was branded PC; but the witnesses for the appellant, to wit, Moore, Coan, C. C. Hudson, Couch, Merrimam, testified that it was a PG, and the appellant, when his title was questioned to the animal, stated that it was a PG. G. B. Mann, J. J. Jackson and Mort Reagan, in their affidavits attached to the motion for a new trial, swear that they took the brand to be PG.

Graham, the former owner of the PG brand, swore: "I had several parties mistake the G in the brand on my horses for a C, and it would frequently show very indistinct; sometimes people could not tell the G from C." William Townsend, a witness for the State, in making the brand as it appeared to him on the animal, made what looks more like a G than a C.

There is no presumption of law as to how a brand would blotch or grow or appear upon an animal, and no such presumption that the jury trying the case had any knowledge on the subject; hence the materiality of disinterested experts, all of whom were ex-officials of Coleman county. (Smith v. The State, 42 Texas, 446: Landin v. The State, 10 Texas Ct. App., 63; Dow v. The State, 12 Id., 343; Wolf v. The State, 14 Id., 210; Ray v. Ray, 4 S. E. Rep., 526; Insurance Co. v. Pruitt, 65 Texas, 125; Best on Ev. [ed. of 1883], 499–504.)

The evidence does not support the verdict.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE.   This is a conviction for theft of a horse, the alleged property of Pink Coats.

Over objections of defendant, the State introduced in evidence the certificate of the record of the brand of W. P. Coats; the objections being, first, that it does not appear from the certificate that the brand was recorded in Taylor county; second, it does not appear from the certificate in what county the brand was recorded; third, because it does not appear from the evidence of Coats that at present and for four years next preceding the present time, he resided in the county of Callahan, and it does not appear that the brand was recorded in Callahan county, where the owner resides, nor in Coleman county, the place of the offense; fourth, because it appears from the testimony of Coats that the brand mentioned in the certificate is not his brand at the present time.

First.   It does not appear with reasonable certainty that the brand was recorded in Taylor county.   The certificate is as follows:

Certificate of Registration of Marks and Brands:

| No. | Name of owner. | Place of residence. | Mark. | Brand. | Location of brand. | Date of registration. |
|-----|----------------|---------------------|-------|--------|--------------------|-----------------------|
|     | W. P. Coats. | Taylor Co. |       | PC | Left shoulder. | February 10, 1879. |

THE STATE OF TEXAS, )
  COUNTY OF TAYLOR.   }     I, David J. Red, Clerk of the County Court in and for said County, do hereby certify that the fore-

going is a true copy of the Record of the mark and brand of W. P. Coats (horse brand).

Witness my hand and seal of office this 6th day of March, 1888.    David J. Red,

Clerk of the County Court, Taylor County.

By J. H. Beckens, Deputy.

(Byrd v. The State, ante, 374.)

When the horse was taken, Coats, the owner, lived and had lived in Callahan county for four years; he owned thirty or forty head of horses, which ran in Callahan and Taylor counties, and at times ran in the northwest portion of Coleman county. When the brand was recorded, Coats lived in Taylor county. (Rev. Stats., art. 4556.)

It is urged by counsel for appellant that the law with reference to recording brands does not apply to horses, and that therefore the certificate was not competent evidence. Marks and brands would be admissible in evidence to prove ownership, whether recorded or not, if not prohibited by statute. Our statute rejects brands unless recorded. (Rev. Stats., art. 4561.) The statute did not make the marks and brands evidence of ownership. They were so intrinsically, but, unless recorded, the statute expressly declares that the brand shall not be recognized as any evidence of ownership of cattle, horses or mules upon which the same may be placed.

We have carefully examined the facts of this case, and are impressed with the opinion that they do not sustain the verdict. This is not a case of conflict in the evidence so much as a difference of opinion as to whether the brand on the animal was PC or PG. If PC the horse was the property of Coats, the prosecutor. The witnesses in number are about equal and are equally positive, with pretty much the same means of knowledge. There was no concealment, the taking being openly, under claim of property, and the brand being such as might reasonably be taken for PC or PG. Under these circumstances we are not willing to sanction the verdict.

The judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Opinion delivered November 28, 1888.